UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MELVIN O. WRIGHT, SR.,

                                                                              Plaintiff,

      vs.

NEW YORK STATE DEPARTMENT
OF CORRECTIONAL SERVICES;                                    9:04-CV-308
COMMISSIONER GOORD; A. DIRIE,[1]                            (J. Mordue)
Corrections Officer; M. McDERMOTT,[2]
Corrections Officer; M. KASUNIC,
Corrections Officer,

                                                                             Defendants.

_____

APPEARANCES                                                      OF COUNSEL

MELVIN O. WRIGHT, SR.
Plaintiff pro se

ELIOT SPITZER                                           CHARLES J. QUACKENBUSH
New York State Attorney General                 Asst. Attorney General
Attorney for Defendants

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

    This matter has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

---

    [1] The plaintiff misspelled this defendant's name "Dire", however, the correct spelling is Dirie, and the court will use the correct spelling of the defendant's name in this Report.

    [2] Plaintiff misspelled this defendant's name "M. Dermutt", however, this correct spelling is McDermott, and the court will use the correct spelling of the defendant's name in this Report.

In this civil rights complaint, plaintiff alleges that he was denied due process during a disciplinary hearing held against him. Plaintiff also alleges excessive force and deliberate indifference to his serious medical needs. Plaintiff seeks substantial monetary relief.

Presently before the court is defendant's motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 24). Plaintiff has responded in opposition to the motion. (Dkt. No. 27). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## DISCUSSION

**1.     Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted). However, only

disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

**2.   Facts**

Plaintiff begins his factual recitation in the complaint with an incident that does not appear to be related to his ultimate claims, but the court will mention these facts because defendant Kasunic is briefly mentioned in the recitation.  Plaintiff alleges that during the week of February 6, 2003, inmate Brandel, who was at that time living on the same "ward"[3] as plaintiff, hit plaintiff on the head with Brandel's walking cane. Complaint ¶ 9.  Plaintiff alleges that inmate Brandel then called the nurse and accused plaintiff of hitting Brandel. *Id.*  Plaintiff states that when security arrived, they removed plaintiff from the ward, but took Brandel's cane away from him. *Id.* ¶ 10.

Defendants state that no misbehavior reports were issued as a result of this incident.  Plaintiff states that on February 26, 2003, security personnel learned that Brandel was the guilty person, but that they gave him back his cane. *Id.* ¶ 11.  Plaintiff states that defendant Kasunic stated that plaintiff did not like "Crackers."[4]  Plaintiff states that as a result of this incident, he filed a complaint with the Greene County District Attorney on February 27, 2003 and sent a copy to Superintendent of

---

[3] At the time of this incident, plaintiff was residing in the Regional Medical Unit (RMU) at Coxsackie Correctional Facility.  Plaintiff was housed in the RMU because he suffers from medical disorders that require a higher level of care. Plaintiff's Deposition Transcript (DT) at 37-38, 42, 50-57 (Quackenbush Decl. Appendix A).

[4] Plaintiff is black, and inmate Brandel is white.  The reference to "crackers" was apparently a racial statement.

Coxsackie, Gary Filion. Complaint ¶ 12.  However, plaintiff alleges that he did not receive a response from either person.

Plaintiff seems to claim that as the result of this incident, he had reason to fear that "these" corrections officers would harm plaintiff. Complaint ¶ 13.  Plaintiff states that this fear also resulted from an "intentional display of force" on February 26, 2003. Plaintiff's description of the events of February 26, 2003 did not include any claim of a display of force by any defendant. *Compare* Complaint ¶ 13 *with* Complaint ¶ 11.

Plaintiff does allege that on May 4, 2003, he was returning from the "Retreat Reunion", and he was "all out of breath, struggling to get to his hospital ward for oxygen."[5] Complaint ¶ 14.  Plaintiff states that he was fixing a cup of coffee, while using his "oxygen concentrate," but that he had to get hot water from the day room. *Id.* Plaintiff alleges in the complaint that when he went into the day room for hot water, he was "assaulted" by defendant Kasunic, who tried to throw plaintiff to the floor and made him spill his coffee. Complaint ¶ 16.  Plaintiff stated that he let the cup drop to the floor, and defendant Kasunic began kicking the cup around the room and telling plaintiff "[w]hen I tell you to do something. [sic] Don't [sic] be asking me any question. Just do it." *Id.*

Plaintiff alleges that defendant Kasunic tried to "cover-up" his actions by filing a misbehavior report against plaintiff.  Plaintiff alleges that the misbehavior report describes plaintiff's anxious state. Plaintiff alleges that he had a disciplinary hearing on May 14, 2003, and that defendant McDermott presided as the hearing officer.

---

[5] Plaintiff suffers from emphysema.

Complaint ¶ 18. Plaintiff states that defendant McDermott found plaintiff guilty. Plaintiff alleges that there was insufficient evidence to find him guilty since there was no corroboration. Complaint ¶ 18. Plaintiff states that defendant Dirie affirmed this disciplinary finding on appeal. Complaint ¶ 19.

Plaintiff also claims that Dr. Wheeler[6] told plaintiff that he should not move around the ward without his oxygen tank. Complaint ¶ 20. Plaintiff claims that on June 25, 2003, he asked a Certified Nurse's Aide to get plaintiff an oxygen tank for use in outside recreation, but never received it. *Id.* ¶ 21. Finally, plaintiff claims that on July 23, 2003, defendant Kasunic was deliberately indifferent to plaintiff's serious medical needs when he took plaintiff's oxygen tank away from him in the day room, disregarding the medical orders. *Id.* ¶ 22.

Defendant Kasunic's version of the events of May 4, 2003 was different than plaintiffs description. A review of the misbehavior report shows that at approximately 7:35 p.m., plaintiff and other inmates were returning from the "LTC-2 Retreat" and that plaintiff went into the day room, but then returned to his room. Quackenbush Decl. App. B at 35. Shortly thereafter, plaintiff returned to the day room, but defendant Kasunic stated that since plaintiff had left the day room once already, he was ordered to return to his room. *Id.* Plaintiff ignored defendant Kasunic and poured hot water for coffee.

Defendant Kasunic ordered plaintiff to "dump" the water and return to his

---

[6] Although plaintiff refers to this individual as "Dr." Wheeler, a review of the exhibits shows that Ms. Wheeler is a Nurse Practitioner. Quackenbush Decl. App. B at p.9.

room, at which time, plaintiff attempted to walk past defendant Kasunic. *Id.*  In doing so, plaintiff spilled the coffee on the floor.  Apparently, the mug also fell to the floor because defendant Kasunic states that he picked up the mug and placed it on a railing in the hall. *Id.*  Kasunic again ordered plaintiff out of the day room.  Defendant Kasunic stated that plaintiff stood in the day room for several minutes, with his hands on his thighs, and did not move, nor did he ask for medical assistance. *Id.*  Then, plaintiff left the day room, asked for his mug, and went back to his room. *Id.*  Plaintiff was charged with being out of place and refusing a direct order.

Plaintiff was afforded a hearing, and found guilty, but received a penalty of only fifteen days loss of privileges, counseling, and reprimand. Quackenbush Decl. App. B at 31.  Defendants have filed a copy of the Tier II hearing transcript. *Id.* App. B at 18-30.  During the disciplinary hearing, plaintiff attempted to explain what he was doing in the day room, and there was a discussion with the hearing officer about whether plaintiff was authorized to be in the room. *Id.* at 20.  Plaintiff claimed that defendant Kasunic tried to throw plaintiff to the floor, and that is why the mug fell. *Id.*  Plaintiff also alleged that the reason that he did not move was that he had gotten the "shakes" and could not move or ask for assistance. *Id.*

Plaintiff alleged at the hearing that defendant Kasunic "grabbed" plaintiff at the neck area and tried to throw him against the wall. *Id.* at 26.  Then plaintiff stated that he pushed defendant Kasunic off to "get out of his hold", and then Kasunic kicked plaintiff's cup all around the room. *Id.*  Plaintiff stated that defendant Kasunic stopped trying to push plaintiff because "he seen [sic] me get ready to hit him." *Id.* at 27.

6

Plaintiff seemed to be claiming that he originally went back to his room to get or to use oxygen and then returned to the day room. *Id.* at 21.

At plaintiff's deposition[7] he also stated that on July 23, 2003, he had a dispute with defendant Kasunic about plaintiff's oxygen equipment. *Id.* at 46-47. Plaintiff stated that he was in the day room with his portable oxygen equipment, and defendant Kasunic told plaintiff that the tank could be used as a weapon and took it from plaintiff. *Id.* Plaintiff stated that this equipment consisted of a tank with a handle, and that the tank is capable of rolling along the floor. *Id.* at 47. Plaintiff then testified that he stayed in the day room until someone came down to bring him a "concentrator." *Id.* at 48. No misbehavior report was written as the result of this incident. *Id.*

In the complaint, plaintiff placed the paragraphs describing the alleged May 4, 2003 assault incident under the heading "Retaliation." Complaint ¶¶ 14-17. At plaintiff's deposition, defense counsel asked what plaintiff meant by retaliation, and plaintiff stated that defendant Kasunic was retaliating against plaintiff because he believed that plaintiff was a "racist." Quackenbush Decl. App. A at 49.

### 3.   **Respondeat Superior**

It is well-settled that in order to be held liable for damages in a section 1983 action a defendant must have been personally involved in the alleged violation. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert. denied*, 434 U.S. 1087

---

[7] Plaintiff was deposed by defense counsel on May 27, 2005. Quackenbush Decl. App. 1, Deposition Transcript (DT). The deposition covered two cases, this action and a related action that is pending before District Judge Lawrence Kahn and Magistrate Judge Peebles. *Wright v. Goord, et al.*, 9:03-CV-743. The related action was filed first, and when plaintiff could not add defendants and claims to that action, he filed this action. (DT at 31-34).

7

(1978). The doctrine of respondeat superior is inapplicable to section 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved, and thus be subject to individual liability, in a constitutional deprivation. A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id*. A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id*. Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id*.

In this complaint, plaintiff names defendant Glenn Goord, the Commissioner of the Department of Correctional Services. Other than in the caption of the complaint, defendant Goord is not alleged to have had any involvement in the incidents of which plaintiff complaints. There is no indication that defendant Goord, whose office is in Albany, knew about plaintiff's medical condition or knew about any problems that plaintiff might have had with defendant Kasunic. Thus, defendant Goord may be dismissed from this action.

Defendants McDermott and Dirie were involved with plaintiff only with respect

to his disciplinary hearing and the appeal of his disciplinary hearing. Although plaintiff claimed at his disciplinary hearing that defendant Kasunic "assaulted" him, the hearing officer who adjudicated the misbehavior was not responsible for any alleged Eighth Amendment violation for excessive force claimed by plaintiff. Additionally, neither defendant McDermott, nor defendant Dirie was involved in any way in plaintiff's allegations regarding the oxygen tank. Thus, the Eighth Amendment claims may be dismissed as against these two defendants for lack of personal involvement in addition to the reasons that the court will discuss below.

**4.     Due Process**

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." The Court in *Sandin* determined that the inmate's discipline in segregated confinement for 30 days did ***not*** present the type of atypical, significant deprivation in which the state might create a liberty interest. *Id*.

In this case, plaintiff did not receive ***any confinement*** as the penalty for his misbehavior. Plaintiff was sentenced to 15 days loss of privileges, was counseled and reprimanded. He also was charged $ 5.00 as "mandatory disciplinary surcharge." Under no circumstances could this penalty be found to be an atypical, significant

deprivation sufficient to create a liberty interest. Thus, no due process claims can arise from the result of the disciplinary hearing, and therefore, no claims can arise out of the appeal of that disciplinary hearing. All due process claims may be dismissed as against McDermott, Dirie, and Kasunic.[8]

## 5. Eighth Amendment

Plaintiff's Eighth Amendment claims are a little unclear. He appears to have two separate claims. First, plaintiff alleges that Kasunic "assaulted" him on May 4, 2003 while plaintiff was attempting to get some hot water for coffee in the day room. Second, plaintiff claims that on July 23, 2003, defendant Kasunic took away plaintiff's portable oxygen tank, contrary to the orders of a nurse practitioner, who told plaintiff that he should not be "moving around" the unit without the oxygen tank.

### A. Assault

When the use of excessive force is alleged, the court must determine whether the force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitely v. Albers*, 475 U.S. 312, 320-21 (1986)(quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)). In order to meet the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary

---

[8] The only due process claim that would have been available against defendant Kasunic under the facts of this case would have been a claim that defendant Kasunic filed a false misbehavior report to cover up his alleged "assault" against plaintiff. However, even if plaintiff were claiming that Kasunic filed a false misbehavior report, this claim would not rise to the level of a constitutional due process violation in any event. *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988).

10

standards of decency' and 'repugnant to the conscience of mankind.'"*Whitely*, 475 U.S. at 327.

Minor uses of physical force do not reach the constitutional level as long as the force used is not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). However, the court must determine the need for the force, the relationship between the need and the amount of force used, the extent of the injury suffered, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of a forceful response. *Whitely*, 475 U.S. at 321. The absence of serious injury may be relevant to the inquiry, but does not end it. *See Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)(citing *Hudson*, 503 U.S. at 7).

In this case, at plaintiff's disciplinary hearing, plaintiff alleged that defendant Kasunic was trying to push plaintiff up against the wall or on the floor, (Disciplinary Hearing Transcript at 20, 26), however, during his deposition, plaintiff alleged that on May 4, 2003, defendant Kasunic grabbed plaintiff by the neck and near his abdomen[9], but then stated that plaintiff pushed defendant Kasunic's hands away. (DT at 38). Regardless of which version of the events is accepted, there was absolutely no injury to plaintiff. Plaintiff claimed that he had several minutes of breathlessness and inability to move as a result of the incident because he has emphysema. (DT at 42).

---

[9] Plaintiff alleges that he had surgery on his colon, and that his abdominal region was sensitive. In a letter, submitted in conjunction with plaintiff's response to the motion for summary judgment, plaintiff states that he had surgery on his colon on December 15, 2001 at Alice Hyde Hospital in Malone, New York. (Dkt. No. 27 at p.14). Plaintiff states that he was not transferred to Coxsackie until August 2002, and the incident at issue in this case did not occur until May 4, 2003. It is difficult to believe that this surgery had any impact upon plaintiff's condition on May 4, 2003.

Plaintiff was examined by medical personnel after the incident, and no injuries were noted. Quackenbush Decl. App. B at p.12. The nurse who examined plaintiff noted no trauma, no bruising, and no injury. *Id.* Nurse Practitioner Wheeler spoke with plaintiff on May 6, 2003 when she went to his room to perform a "routine monthly exam." *Id.* at p.15. In a memorandum[10] dated May 14, 2003, Nurse Practitioner Wheeler stated that when she spoke to plaintiff on May 6, 2003, he related the May 4, 2003 incident to her. *Id.* Nurse Practitioner Wheeler stated that her examination on the morning of May 6, 2003 was "negative for injury." She also stated that the tests and consultations that she ordered on May 6, 2003 were related to plaintiff's chronic and pre-existing conditions, not to the alleged altercation of May 4. *Id.*

Plaintiff's own testimony during the deposition in this action belies his claim that defendant Kasunic used excessive force on May 4, 2003. Plaintiff does not allege that he was actually thrown to the floor or up against a wall. Plaintiff himself states that he pushed defendant Kasunic's hands away, and that the worst thing that happened after that was that defendant Kasunic kicked plaintiff's mug around the floor. In fact, as stated above, plaintiff testified that defendant Kasunic stopped what he was doing because he realized that plaintiff was going to hit him. The fact that plaintiff became short of breath because he was upset and could not move for a few

---

[10] This memorandum, and other relevant documents, were submitted in conjunction with the investigation of plaintiff's grievance relating to this matter. Defendants have included the grievance documents in Appendix B to the Quackenbush Declaration. This Appendix contains various memoranda written by medical staff who cared for plaintiff. This Appendix also contains the documents relevant to the disciplinary hearing and documents relevant to the oxygen tank issue.

12

minutes does not change the fact that there was no injury and ***at worst***, the contact consisted of a push or shove by defendant Kasunic.[11] Thus, any excessive force claims may be dismissed as against defendant Kasunic.

### B. Medical Needs

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff must allege that his access to physicians for necessary medical care was unreasonably delayed or denied, or that prescribed medical treatment was not administered. *Tomarkin v. Ward*, 534 F. Supp. 1224, 1240 (S.D.N.Y. 1982) (citing *Todaro v. Ward*, 431 F. Supp. 1129, 1133 (S.D.N.Y.)), *aff'd*, 565 F.2d 48 (2d Cir. 1977).

The court would point out that disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id*. (citations omitted). An inmate does not have the right to treatment of his choice. *Id*. (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988) Additionally, negligence by physicians, even amounting to malpractice does not become a constitutional violation because the plaintiff is an inmate. *Estelle*, 429 U.S.

---

[11] This court makes absolutely no finding that any contact occurred. The court is only using plaintiff's statement that there was contact between him and defendant Kasunic for purposes of the summary judgment motion.

at 107. *See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under section 1983.

In this case, plaintiff states that he has emphysema, and that he must move around carrying a machine for oxygen. Apparently, there are two types of medical equipment that plaintiff uses. One appears to be a rolling oxygen tank, and the other is referred to as an "oxygen concentrator." Plaintiff claims that on July 23, 2003, defendant Kasunic approached plaintiff in the day room and told plaintiff that he could not have the oxygen tank in the day room because it could be used as a weapon. Defendant Kasunic then took the tank away from plaintiff. Plaintiff claims that this action was contrary to Nurse Practitioner Wheeler's order that plaintiff not ambulate without his oxygen.

It is undisputed that plaintiff has emphysema, and that he uses some form of oxygen equipment. Plaintiff testified at his deposition, that defendant Kasunic told plaintiff that he could not have the tank in the day room because it could be used as a weapon. Although apparently the tank was taken from plaintiff, he stated at his deposition that he waited in the day room until someone brought him an oxygen concentrator. (DT at 48). In a memorandum from C. Louks, HSA regarding an apparently unrelated grievance by plaintiff, it is stated that plaintiff has an order for an "O2" concentrator in his room and "a tank for distances." Quackenbush Decl. App. B at p.9.

Plaintiff filed a grievance regarding his oxygen equipment four months after

this incident, and the grievance appears unrelated to the alleged July 23, 2003 incident. However, defendants have submitted the documents related to the investigation of plaintiff's grievance, and it is clear that plaintiff is inconsistent with his requests and his need for this equipment. Quackenbush Decl. App. C at p.3. In a memorandum to the Grievance Officer, written by K. Allen, DON (Director of Nursing), it is noted that plaintiff is inconsistent with his oxygen needs, sometimes walking to the day room without his oxygen and other times when he requests only the tank and not the concentrator. *Id.*

Even assuming that plaintiff's allegations that Officer Kasunic took the tank away from plaintiff, it is clear that defendant Kasunic had a reason for doing so and that plaintiff suffered no injury as a result. Plaintiff testified at his deposition that he simply waited in the day room for someone to bring him the concentrator. (DT at 46-49). There is no indication from any of the evidence that plaintiff has been ordered by medical personnel to have the oxygen tank with him at all times. As stated above, any disagreement with the treatment provided by the medical personnel is not actionable under section 1983. Thus, there is no genuine issue of material fact with respect to plaintiff's claim that defendant Kasunic was deliberately indifferent to plaintiff's serious medical needs.

In his response to the motion for summary judgment, plaintiff states that the court should not consider his physical injuries, since plaintiff has no physical injuries relating to the conduct at issue, but should focus on his mental or emotional injuries that have apparently occurred as the result of the incidents making up the basis for this

action. However, the Second Circuit has specifically held, interpreting the Prison Litigation Reform Act, that the statute requires a prior showing of physical injury when making claims of emotional distress under the Eighth Amendment. *Liner v. Goord*, 196 F.3d 132, 134 (2d Cir. 1999). Thus, plaintiff cannot claim emotional damages alone, and his claims under the Eighth Amendment may still be dismissed.

**6.** **Retaliation**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)).

In this case, plaintiff uses the word "retaliation" at the heading of one of his arguments, but when asked at his deposition what the basis was for his retaliation claim, plaintiff stated that defendant Kasunic was retaliating against plaintiff because Kasunic believed that plaintiff did not like white people. (DT at 49). Plaintiff has shown no constitutionally protected conduct that allegedly formed the basis of any claim of retaliation. The alleged dislike of white people is not a constitutionally protected activity, thus, although plaintiff uses the word "retaliation", he is not stating any constitutional claim.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 24) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 1, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge